IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEAN E. CALHOUN | § | |
| | § | |
| V. | § | A-14-CA-832-LY |
| | § | |
| CALDWELL COUNTY JAIL, | § | |
| LIEUTENANT F/N/U BROWN, | § | |
| LIEUTENANT F/N/U LARAVIE,[1] and | § | |
| WILLIE CLAY | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(f) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas. Before the Court are Plaintiff Dean E. Calhoun's complaint brought pursuant to 42 U.S.C. § 1983 (Dkt. No. 1); the Motion for Summary Judgment filed by Defendants Brown, Larivee, and Clay (Dkt. No. 47); Plaintiff's affidavits (Document Nos. 53 and 73); Plaintiff's Response to the Motion for Summary Judgment and Cross Motion for Summary Judgment (Dkt. No. 74); Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment (Dkt. No. 78); Plaintiff's Response to Defendants' Reply (Dkt. No. 79); Plaintiff's Memorandum in Support of Plaintiff's Reply to Defendants' Answer to Cross Summary Judgment (Dkt. No. 80); and Plaintiff's Memorandum in Opposition of Defendants' Denial of Proof

---

[1] Defendants indicate this defendant's last name is spelled "Larivee." The Court will refer to the correct spelling of this defendant's name in the body of the Report and Recommendation.

in their Response to Motion for Summary Judgment (Dkt. No. 82). Plaintiff, proceeding pro se, has been granted leave to proceed in forma pauperis.

## I. BACKGROUND

At the time he filed his civil rights complaint, Plaintiff was an inmate incarcerated in the Comal County Jail, but his suit complains of treatment he received at the Caldwell County Jail.[2] He names as defendants the Caldwell County Jail, Lieutenant Brown, Lieutenant Larivee, and Corporal Willie Clay.

According to Plaintiff, he was arrested on March 27, 2014, and booked into the Caldwell County Jail. Plaintiff asserts that at the time of book-in he conveyed to the jail's medical supervisor, Lieutenant Brown, that he was a disabled person, on specific fragile anxiety medication for his Post Traumatic Stress Disorder, and under the care of Dr. Karla Kousista. Plaintiff alleges Lieutenant Brown had Plaintiff's family bring his medications to the jail. Subsequently, Plaintiff was told he could not have them. According to Plaintiff, he informed Lieutenant Brown a reckless and rapid retraction of his medications would be traumatic, dangerous, and potentially fatal. Plaintiff accuses Lieutenant Brown of failing to disburse proper medications as prescribed by a physician. Relatedly, Plaintiff alleges Lieutenant Larivee allowed the abuse after being informed and ignored Plaintiff's requests and grievances. Plaintiff further alleges Corporal Clay placed Plaintiff back in Lieutenant Brown's care after Plaintiff was returned from the emergency room. Plaintiff contends he now has permanent damage and may have suffered a stroke as a result of the defendants' malicious neglect. Plaintiff seeks damages for his future medical expenses and $510,000.00.

---

[2] Plaintiff was subsequently released from jail.

Plaintiff filed his complaint in the San Antonio Division.  After consideration of Plaintiff's complaint, the San Antonio District Court ordered service upon Defendants Brown, Larivee, and Clay but did not order service upon the Caldwell County Jail.  The San Antonio District Court subsequently transferred the case to the Austin Division.

Brown, Larivee, and Clay move for summary judgment.  They assert their entitlement to qualified immunity.  They argue that to the extent they are sued in their supervisory capacities, the claims should be dismissed because supervisory officials are not liable for their subordinates' actions under any theory of vicarious liability pursuant to § 1983.

With respect to Plaintiff's claims brought against Brown for his failure to "disburse proper medications as prescribed by physician leading to injury," Defendants contend Plaintiff has not produced any evidence that Brown acted with deliberate indifference to Plaintiff's medical needs. According to Defendants, during Plaintiff's initial medical screening through the booking procedure, Plaintiff reported he was prescribed Xanax, Zoloft, and Ambien to treat PTSD and anxiety before his incarceration.  Defendants state that Caldwell County Jail policy mandates that Xanax or Ambien cannot be administered to inmates due to their classification as controlled substances.  Defendants further argue that they did not allow Plaintiff to use the medications brought to the jail by an outside party, because someone had tampered with the medication.  Specifically, Defendants assert 26 doses were missing.

Instead of providing Plaintiff with his personal medications, Defendants assert the physician for the Caldwell County Jail, Dr. Chudleigh, prescribed alternative anti-anxiety medications for Plaintiff and continued Plaintiff on his prescription for Zoloft.  Defendants assert Dr. Chudleigh also placed Plaintiff on a detox program for benzodiazepines (Xanax) and methamphetamines.

According to Defendants, Plaintiff was placed in medical segregation due to the detox program. The medical notes provided by Defendants indicate that although Plaintiff was irritable and wanted his original medications, he did not present any medical issues until April 26, 2014, a full month after his incarceration.

Defendants argue Lieutenant Brown relied on Dr. Chudleigh's instructions with regard to the medical care provided to Plaintiff. They contend Brown never had the authority to make decisions regarding Plaintiff's medical care, but instead relied entirely upon Dr. Chudleigh's instructions with regard to what medical care to provide to Plaintiff.

Defendants contend that Plaintiff's disagreement with the course of his medical treatment or the forms of treatment he received does not amount to a violation of his constitutional rights. They further argue Plaintiff fails to explain why he believes the medical incident that occurred on April 26, 2014, was related to the change in his medications. Defendants note Plaintiff told hospital staff he had a history of seizures, and the hospital staff provided no additional prescriptions in the treatment of Plaintiff, nor did the doctors there recommend any change to the medications or treatment Plaintiff was receiving at the jail.

Defendants assert that Plaintiff has not shown Brown refused to treat Plaintiff, ignored his complaints, intentionally treated him incorrectly, or engaged in conduct that clearly indicates a wanton disregard for Plaintiff's health or safety. To the contrary, they assert Plaintiff was prescribed medications to address the only medical issues the Plaintiff disclosed to booking officers. Defendants maintain all of Plaintiff's medical complaints were promptly addressed by Brown and referred to Dr. Chudleigh for review in accordance with Caldwell County Jail policy. When Plaintiff experienced symptoms consistent with a seizure on April 26, 2014, Defendants assert Brown

4

immediately gave the directive to take Plaintiff to the emergency room to treat the issue. Upon his discharge from the hospital, Defendants indicate Plaintiff was returned to medical segregation for approximately one week to monitor his condition in accordance with the hospital's discharge instructions.

With respect to Plaintiff's claims brought against Larivee for ignoring Plaintiff's requests and grievances regarding his medical care, Larivee contends Plaintiff has failed to show Larivee had any personal involvement with the alleged violation of Plaintiff's constitutional rights. According to Defendants, Larivee promptly addressed each of Plaintiff's complaints and grievances. Defendants assert Larivee did not have the authority to make decisions regarding Plaintiff's medical care and instead relied upon Dr. Chudleigh's instructions to Brown, the medical supervisor, in relation to Plaintiff's medical treatment. Defendants contend Plaintiff was simply in disagreement with the treatment and opinion of Dr. Chudleigh.

With regard to Plaintiff's claims brought against Clay for putting Plaintiff back in Brown's care upon Plaintiff's return from the hospital, Defendants assert Clay had very little contact with Plaintiff during his incarceration. According to Defendants, Clay determined Plaintiff should be placed in medical segregation to closely monitor his behavior for signs of overdose or other psychiatric issues after Plaintiff had been found hoarding medications. Plaintiff was also placed in medical segregation for approximately one week after his discharge from the hospital. They deny Clay acted with deliberate indifference to Plaintiff's medical needs or violated Plaintiff's constitutional or other statutory rights by following hospital instructions to monitor Plaintiff's condition.

Although Plaintiff does not appear to have raised any state law claims in his civil rights complaint, Defendants move for summary judgment on state law claims. Additionally, they point out the Caldwell County Jail is not an entity capable of being sued and argue the Court does not have the authority to consider the liability of Caldwell County.

In his response to Defendants' Motion for Summary Judgment Plaintiff repeats the allegations made in his original complaint. He also alleges, among other things, the Defendants slandered him by mentioning Plaintiff was in possession of liquid methamphetamine and needles when booked into the Caldwell County Jail. Plaintiff also states he is unaware of the term "SSSD" referred to by Defendants in their Motion for Summary Judgment and states the documents provided by the defendants do not accurately reflect his anxiety worsens without medication. Plaintiff further alleges Defendants slandered him by referencing his intoxication and track marks observed by Defendants upon his booking at the Caldwell County Jail and denies he was intoxicated on methamphetamines during booking. Plaintiff complains Brown treated Plaintiff as a drug addict instead of a patient, fired Plaintiff's doctor without his consent, and withheld prescribed medications. Plaintiff alleges the medications prescribed by Dr. Chudleigh were not effective and caused "severe anxiety/panic traumatic explosion." Plaintiff alleges his lack of one-on-one appointment with Dr. Chudleigh while incarcerated caused his injuries in the Caldwell County Jail. Plaintiff accuses Brown of telling Texas Jail Standards that Plaintiff was refusing his medications. Plaintiff also alleges Brown lied in his discovery responses when he denied "giving the Plaintiff [the] ineffective drug Vistaril after the detox protocol." With regard to Defendants' allegation that Plaintiff was caught hoarding medications, Plaintiff responds he was forced to hoard medications due to the ineffectiveness of the medications he was given. He believes the subsequent disciplinary actions

6

regarding the hoarding of medications was malicious. Plaintiff also believes Defendants are withholding information regarding his transport to the hospital following the medical episode on April 26, 2014. Plaintiff asserts the facts represented in Defendants' Motion for Summary Judgment do not match the facts he remembers, and his medical records from the hospital are not accurately depicted. Plaintiff also alleges the discharge instructions provided by the hospital did not accurately represent his medical issues. Plaintiff alleges Brown coerced the doctors at the hospital to deny medications to Plaintiff. Plaintiff further states he told Sgt. Brown, the intake officer, that his symptoms magnify without his medications.

Plaintiff also provides the Court with two affidavits. According to Plaintiff's first affidavit, on April 26, 2014, he felt a serious anxiety attack approaching, so he went to the call button and blacked out. He recalls statements from jail officials and paramedics, leading him to believe the April 26, 2014 episode was related to his medication regimen. Plaintiff repeats these recollections in his second affidavit. Also, in Plaintiff's second affidavit, he states he had a family member bring his personal medications to the jail. He admits he instructed the family member to remove 25 doses to keep at Plaintiff's house. Plaintiff also asserts he attempted to talk to Brown about his medications on April 11, 2014. According to Plaintiff, Brown wanted nothing to do with Plaintiff and told him to "talk to your attorney!" On April 16, 2014, Plaintiff claims he approached Brown and asked when he would be allowed to see Dr. Chudleigh. Brown allegedly replied, "You reap what you sow." Plaintiff states this was in response to Plaintiff previously calling Brown a "prick." Plaintiff asserts that several days after his return from the hospital, he asked whether he could keep his "bean hole" open for fresh air. Plaintiff claims Brown denied the request, because jail policy prohibited this. Plaintiff complains that in regular segregation the sergeant allows the "bean hole"

to remain open or cracked a little for mentally ill prisoners. Plaintiff further complains Brown refused to discuss Plaintiff's medical care with Plaintiff's mother over the phone on one occasion. Plaintiff also asserts Brown falsely told Plaintiff he would be moved to general population on May 2, 2014. He further asserts Brown denied him permission to go to the rec yard and taunted him about his commissary on another occasion.[3]

Defendants reply that most of Plaintiff's arguments are not responsive or relevant to Defendants' Motion for Summary Judgment and should not be considered. Defendants also assert Plaintiff may not raise new claims in a response for summary judgment or name new defendants, such as Sheriff Daniel Law or Dr. Chudleigh.

Defendants repeat that controlled substances are not permitted in the Caldwell County Jail. Therefore, Plaintiff was allegedly prescribed an alternative medication, hydroxyzine (Vistaril), to treat his anxiety symptoms. Defendants assert that when Plaintiff arrived at the Caldwell County Jail visibly intoxicated on methamphetamines and admitted to taking Xanax daily, medical staff placed Plaintiff on a detox program of Lorzepam to ensure that any withdrawal was supervised and medically safe. Defendants also state that jail policies were followed when addressing Plaintiff's medical issue on April 26. According to Defendants, per the "Seizure Protocol," an inmate that suffers a seizure is given 1-2 mg of Ativan and sent to the emergency room via EMS and staff documents the incident. With regard to Plaintiff's claim of permanent injury, Defendants refer to the jail Activity Logs indicating Plaintiff was "walking in cell," pacing," "out to rec," and other activities until his transfer to the Comal County Jail in May 2014. Defendants admit Plaintiff did

---

[3]Plaintiff's first affidavit attaches an affidavit of another inmate at the Comal County Jail. The affidavit provided by the Comal County Jail inmate has no relevance to the case at hand, and thus will not be addressed further.

not see Dr. Chudleigh in person during his incarceration, but that Dr. Chudleigh regularly reviewed medical notes and followed the medical standing orders of the jail when prescribing medications. Defendants repeat that Clay did not maliciously place Plaintiff in the medical segregation unit and instead was simply following jail policy for inmates found hoarding medications to ensure they were medically stable.

In his reply, Plaintiff repeats much of what he has previously alleged. In addition, he asserts that his complaint, originally filed in San Antonio and later transferred to this Court, lists Sheriff Daniel C. Law as a defendant. Apparently, Plaintiff presented a purported copy of his complaint to the Clerk's Office for a file stamp. However, the copy was not identical to the original complaint that was actually filed. The file-stamped copy lists Daniel C. Law as a defendant, whereas the originally filed complaint did not.

## II. ANALYSIS

A.   Standard Under 28 U.S.C. § 1915(e)

Service was not ordered upon the Caldwell County Jail, because it is not an entity capable of being sued. Service was also not ordered upon Sheriff Daniel C. Law, because he was not named as a defendant on the complaint filed in San Antonio and later transferred to Austin.

The Court will analyze Plaintiff's claims against the Caldwell County Jail and Sheriff Law[4] under 28 U.S.C. § 1915(e), because these defendants have not been served. An in forma pauperis proceeding may be dismissed sua sponte under 28 U.S.C. § 1915(e) if the court determines the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks

---

[4] Because Plaintiff is proceeding pro se, the Court will consider Plaintiff's claims as if they were additionally brought against Sheriff Law.

not see Dr. Chudleigh in person during his incarceration, but that Dr. Chudleigh regularly reviewed medical notes and followed the medical standing orders of the jail when prescribing medications. Defendants repeat that Clay did not maliciously place Plaintiff in the medical segregation unit and instead was simply following jail policy for inmates found hoarding medications to ensure they were medically stable.

In his reply, Plaintiff repeats much of what he has previously alleged. In addition, he asserts that his complaint, originally filed in San Antonio and later transferred to this Court, lists Sheriff Daniel C. Law as a defendant. Apparently, Plaintiff presented a purported copy of his complaint to the Clerk's Office for a file stamp. However, the copy was not identical to the original complaint that was actually filed. The file-stamped copy lists Daniel C. Law as a defendant, whereas the originally filed complaint did not.

## II. ANALYSIS

A.   Standard Under 28 U.S.C. § 1915(e)

Service was not ordered upon the Caldwell County Jail, because it is not an entity capable of being sued. Service was also not ordered upon Sheriff Daniel C. Law, because he was not named as a defendant on the complaint filed in San Antonio and later transferred to Austin.

The Court will analyze Plaintiff's claims against the Caldwell County Jail and Sheriff Law[4] under 28 U.S.C. § 1915(e), because these defendants have not been served. An in forma pauperis proceeding may be dismissed sua sponte under 28 U.S.C. § 1915(e) if the court determines the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks

---

[4] Because Plaintiff is proceeding pro se, the Court will consider Plaintiff's claims as if they were additionally brought against Sheriff Law.

monetary relief against a defendant who is immune from suit.  A dismissal for frivolousness or maliciousness may occur at any time, before or after service of process and before or after the defendant's answer.  Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986).

When reviewing a plaintiff's complaint, the court must construe plaintiff's allegations as liberally as possible.  Haines v. Kerner, 404 U.S. 519 (1972).  However, the petitioner's pro se status does not offer him "an impenetrable shield, for one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation and abuse already overloaded court dockets."  Farguson v. MBank Houston, N.A., 808 F.2d 358, 359 (5th Cir. 1986).

### 1.   *Caldwell County Jail*

The Caldwell County Jail is not a legal entity capable of being sued.  See Guidry v. Jefferson County Detention Center, 868 F. Supp. 189, 191 (E.D. Tex. 1994) (holding that the Jefferson County Detention Center is not a legal entity subject to suit); Darby v. Pasadena Police Dep't, 939 F.2d 311 (5th Cir. 1991) (holding that police and sheriff's departments are governmental subdivisions without capacity for independent legal action).  Therefore, Plaintiff's claims against the jail should be dismissed for failure to state a claim upon which relief can be granted.

### 2.   *Sheriff Daniel C. Law*

Plaintiff appears to have sued Sheriff Law because of his supervisory role.  However, supervisory officials cannot be held vicariously liable in § 1983 cases solely on the basis of their employer-employee relationship.  Monell v. Department of Social Services, 436 U.S. 658, 693 (1978);  Lozano v. Smith, 718 F.2d 756, 768 (5th Cir. 1983).  If a supervisor is not personally involved in the alleged constitutional deprivation, he may be held liable only if there is a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violations.

Thompkins v. Belt, 828 F.2d 298, 303-04 (5th Cir. 1987). In order to demonstrate a causal connection, the supervisor would have to "implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Id. at 304. Plaintiff has failed to provide a basis for holding Sheriff Law liable in this case. Accordingly, Plaintiff's claims against Sheriff Law should be dismissed for failure to state a claim upon which relief can be granted.

    B.    <u>Summary Judgment Standard</u>

Defendants Brown, Larivee and Clay have filed a motion for summary judgment. A court will, on a motion for summary judgment, render judgment if the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Eason v. Thaler, 73 F.3d 1322, 1325 (5th Cir. 1996); Int'l Shortstop, Inc. v. Rally's Inc., 939 F.2d 1257, 1263 (5th Cir. 1991), cert. denied, 502 U.S. 1059 (1992). When a motion for summary judgment is made and supported, an adverse party may not rest upon mere allegations or denials but must set forth specific facts showing there is a genuine issue for trial. Ray v. Tandem Computers, Inc., 63 F.3d 429, 433 (5th Cir. 1995); FED. R. CIV. P. 56.

Both movants and non-movants bear burdens of proof in the summary judgment process. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense. Id. at 322. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. Id. at 323-24. At that point, the burden shifts to the non-moving party to "produce evidence in support of its claims or affirmative defenses . . . designating specific facts showing that there is a genuine issue for trial." Id. at 324. The non-

moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Tubacex v. M/V Risan, 45 F.3d 951, 954 (5th Cir. 1995).

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." James v. Sadler, 909 F.2d 834, 837 (5th Cir. 1990) (citing Matsushita, 475 U.S. at 586)). To the extent facts are undisputed, a Court may resolve the case as a matter of law. Blackwell v. Barton, 34 F.3d 298, 301 (5th Cir. 1994).

### 1. *Qualified Immunity*

Defendants Brown, Larivee, and Clay assert that they are entitled to qualified immunity. The doctrine of qualified immunity affords protection against individual liability for civil damages to officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Immunity in this sense means immunity from suit, not merely from liability. Jackson v. City of Beaumont, 958 F.2d 616 (5th Cir. 1992). "Qualified immunity is designed to shield from civil liability all but the plainly incompetent or those who violate the law." Brady v. Fort Bend Cnty., 58 F.3d 173, 174 (5th Cir. 1995).

To rebut the qualified immunity defense, the plaintiff must show: (1) that he has alleged a violation of a clearly established constitutional right, and (2) that the defendant's conduct was objectively unreasonable in light of clearly established law at the time of the incident. Waltman v.


Payne, 535 F.3d 342, 346 (5th Cir. 2008) (footnote omitted). To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present "absolute proof," but must offer more than "mere allegations." Reese v. Anderson, 926 F.2d 494, 499 (5th Cir. 1991).

For several years, the Supreme Court required that the first of these criteria—whether plaintiffs' facts allege a constitutional violation—must be decided at the outset. Saucier v. Katz, 533 U.S. 194, 201 (2001). However, in 2009 the Court reversed course, holding that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson v. Callahan, 555 U.S. 223, 236 (2009).

Because Plaintiff was a pretrial detainee at the time in question, his rights derive from the Fourteenth Amendment, not the Eighth Amendment. See Hare v. City of Corinth, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (stating that pretrial detainee's rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment"). Having said this, because the standard is essentially the same for both pretrial detainees and post-conviction prisoners, cases applying the Eighth Amendment are still relevant to the Court's analysis. Thus, to succeed in this § 1983 action, Plaintiff must establish the defendants were deliberately indifferent to his serious medical condition, "an extremely high standard to meet." Domino v. Tex. Dept of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001); see also Farmer v. Brennan, 511 U.S. 825, 835 (1994) ("a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety"). An incorrect medical diagnosis is not sufficient to establish a claim. Id. at 756. Also, disagreement with a course of medical treatment will

not suffice. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir. 1991).

Plaintiff's allegations at most amount to a disagreement with a course of medical treatment. Plaintiff has failed to provide the Court with admissible summary judgment evidence showing jail officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Instead, the undisputed evidence demonstrates that the Defendants responded to the medical needs of the Plaintiff, albeit in a different manner than the Plaintiff desired. The undisputed evidence is insufficient to support a claim of deliberate indifference to Plaintiff's medical needs. Accordingly, summary judgment is proper.

    2.  *Caldwell County Liability*

Plaintiff's claims brought against the defendants in their official capacities is the same as if Plaintiff brought his claims against Caldwell County. A political subdivision cannot be held responsible for a deprivation of a constitutional right merely because it employs a tortfeasor; in other words a local government unit cannot be held responsible for civil rights violations under the theory of respondeat superior. Johnson v. Moore, 958 F.2d 92, 94 (5th Cir. 1992). The standard for holding a local government unit responsible under § 1983 requires that there be a custom or policy that caused the plaintiff to be subjected to the deprivation of a constitutional right. Id. Collins v. City of Harker Heights, Tex., 916 F.2d 284, 286 (5th Cir. 1990), aff'd, 503 U.S. 115 (1992). Thus, Caldwell County would violate an individual's rights only through implementation of a formally declared policy, such as direct orders or promulgations, or through informal acceptance of a course of action by its employees based upon custom or usage. Bennett v. City of Slidell, 728 F.2d 762, 768

(5th Cir. 1984), cert. denied, 472 U.S. 1016 (1985).  A single decision made by an authorized governmental decisionmaker to implement a particular course of action represents an act of official government "policy."  Pembaur v. Cincinnati, 475 U.S. 469, 481 (1986).

Not only has Plaintiff failed to establish his constitutional rights were violated, Plaintiff fails to identify a policy, practice or custom of Caldwell County that caused any alleged deprivation of his constitutional rights.  Accordingly, summary judgment is also appropriate on Plaintiff's claims brought against the defendants in their official capacities.

  C. State Law Claims

Defendants move for summary judgment on Plaintiff state law claims.  Construing Plaintiff's complaint liberally, as it must, the Court is of the opinion Plaintiff has not raised any state law claims in his complaint.  Had Plaintiff raised state law claims, the Court would have recommended to the District Court to decline to exercise supplemental jurisdiction over such claims.  Pursuant to 28 U.S.C. § 1367, a district court generally has supplemental jurisdiction over claims that are so related to claims in the action which it has original jurisdiction that they form part of the same case or controversy.  However, a district court may decline to exercise supplemental jurisdiction over a claim if the court has dismissed all claims over which it has original jurisdiction.

### III. RECOMMENDATION

The undersigned recommends that the District Court **DISMISS WITH PREJUDICE** Plaintiff's claims brought against Caldwell County Jail for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e), **DISMISS WITH PREJUDICE** Plaintiff's claims brought against Sheriff Daniel C. Law for failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e), **GRANT** the Motion for Summary Judgment [#47] filed by

Defendants Brown, Larivee, and Clay, and **DENY** the Cross Motion for Summary Judgment [#74] filed by Plaintiff.

### IV. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within 14 days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415, 1428-29 (5th Cir. *en banc*, 1996).

To the extent that a party has not been served by the Clerk with this Report and Recommendation electronically, pursuant to the CM/ECF procedures of this District, the Clerk is ORDERED to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 10th day of July, 2015.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE